AF Approval             Chief Approval _CLK_

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                         CASE NO.   8:23-cr-249-VMC-MRM

CHRISTOPHER JOSEPH

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Roger B. Handberg, United States Attorney for the Middle District of Florida,

and the defendant, Christopher Joseph, and the attorney for the defendant,

Matthew Farmer, mutually agree as follows:

**A.**    **Particularized Terms**

     1.    Count Pleading To

         The defendant shall enter a plea of guilty to Count One of the

Information. Count One charges the defendant with destruction of evidence,

in violation of 18 U.S.C. § 1519.

     2.    Maximum Penalties

         Count One carries a maximum sentence of 20 years'

imprisonment, a fine of $250,000, a term of supervised release of not more

than three years, and a special assessment of $100 per felony count for

individuals. With respect to certain offenses, the Court shall order the

Defendant's Initials   CJ

defendant to make restitution to any victim of the offense, and with respect to

other offenses, the Court may order the defendant to make restitution to any

victim of the offense, or to the community, as set forth below.

3. Elements of the Offense

The defendant acknowledges understanding the nature and

elements of the offense with which the defendant has been charged and to

which the defendant is pleading guilty. The elements of Count One are:

First: The defendant altered, destroyed, mutilated, concealed,

covered up, or made a false entry in a record, document, or tangible object,

Second: The defendant did so with the intent to impede, obstruct,

or influence an investigation within the jurisdiction of a department or agency

of the United States, and

Third: The defendant acted knowingly.

4. Indictment Waiver

The defendant will waive the right to be charged by way of

indictment before a federal grand jury.

5. No Further Charges

If the Court accepts this plea agreement, the United States

Attorney's Office for the Middle District of Florida agrees not to charge

defendant with committing any other federal criminal offenses known to the

United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6. <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

7. <u>Acceptance of Responsibility - Two Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to United States Sentencing Guidelines section 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court,

Defendant's Initials CJ                    3

and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

8.  Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

9.  Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to

Defendant's Initials  CJ                    4

sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10.  Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the

course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

11. <u>Cooperation - Responsibilities of Parties</u>

      a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

      b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(3)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(4)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

Defendant's Initials  CJ            7

B.    **Standard Terms and Conditions**

    1.    Restitution, Special Assessment and Fine

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

        On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.  To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check or money order to the Clerk of the Court in the amount

Defendant's Initials  <u>CJ</u>        8

of $100.00, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing.

The defendant understands that this agreement imposes no limitation as to fine.

2. <u>Supervised Release</u>

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal

Defendant's Initials _C J_          9

activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States

Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.     Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw

Defendant's Initials _CJ_          11

defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

Defendant's Initials _CJ_         12

8.  Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.  Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.  Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation

Defendant's Initials $CJ$                    13

and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

   11.   Factual Basis

         Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set

Defendant's Initials ___CJ___          14

forth below are true, and were this case to go to trial, the United States would

be able to prove those specific facts and others beyond a reasonable doubt.

## FACTS

On or about November 3, 2022, FBI agents in the District of New

Jersey began conducting an investigation concerning a violation of 18 U.S.C.

§ 875 (interstate communications with threat to injure) committed by an

individual named Omar Alkattoul, based on threats he had made online to

conduct a violent attack against Jewish individuals or synagogues in the

United States.

On or about November 4, 2022, Alkattoul agreed to be interviewed by

law enforcement officers. Law-enforcement officers also conducted a

consensual search of Alkattoul's phone, which revealed that, on or about

November 1, 2022, Alkattoul had used a social media application

[Application-2] to communicate with another user of Application-2

[Individual-1], and Alkattoul referred to a document that he had been writing

that was "in the context of an attack on Jews." Shortly thereafter, Alkattoul

sent a link to the document to Individual-1.

On November 10, 2022, Alkattoul was charged by Complaint in the

United States District Court for the District of New Jersey with violating 18

Defendant's Initials  CJ          15

U.S.C. § 875 (interstate communications with threat to injure). An arrest warrant was issued, and FBI agents arrested him that same day.

Searches of Alkattoul's phone showed that, on or about October 29, 2022, he had sent a message via an encrypted messaging application [Application-1] to "CJ", the defendant here, Christopher JOSEPH. Alkattoul wrote "I got messaged by AQ trying to explain to the guy that I can't go and attack but he's urging me to . . . TTP recruitment." AQ refers to al-Qaeda, a terrorist organization, and TTP refers to Tehrik-e Taliban Pakistan, a group of militant Taliban groups, formed to oppose the Pakistani military.

Alkattoul also sent JOSEPH a screen capture of a message he had received on social media from another individual [Individual-2], which said, "brothers told me u will @ttck in US." Alkattoul responded: "Yeah, so basically about 2 months ago I told [Individual-3] and [Individual-4] that I was planning an attack but it's gonna take me years to prepare for it because I don't have items and my parents do not like guns. I said I could be targeting a synagogue or gay night club. And this would be AQ affiliated attack."

Early in the morning on November 5, 2022, FBI agents in Tampa, Florida, met JOSEPH at the Police Station at the University of South Florida (USF). At that time, JOSEPH was enrolled at USF as an undergraduate student. The agents identified themselves, explained that they had received

information about a threat, and they asked to speak with JOSEPH about his social media activity. JOSEPH voluntarily agreed to speak with agents.

JOSEPH disclosed to the FBI agents several, but not all, social media and messaging accounts he utilized. He also relayed that he was in several Application-1 channels, and that he used Application-1 for "LARPing" and/or talking about "racist stuff." He also said that he follows pro-ISIS channels, and he views videos encouraging others to join ISIS.

After speaking to the agents for approximately 42 minutes, JOSEPH voluntarily agreed to take the agents to his dorm room to view contents on his phone. While walking to the room, JOSEPH stated, "I know it's illegal to provide financial support and post threats. Are being in these groups and looking at that stuff illegal?" The agents told JOSEPH that looking at content was not illegal.

JOSEPH and the agents got to his room at approximately 12:54 a.m. JOSEPH went in his room to retrieve his phone, while the agents waited in the hallway. The Agents suggested they go to a nearby common area to continue their interview. JOSEPH agreed. While walking down the hall to the common area, one of the agents observed JOSEPH open Application-1 and appear to delete the most recent thread.

The agents then continued the interview in the common area of the dorm. JOSEPH agreed to allow agents to view the content on his phone, and he unlocked the phone and put it in the middle of the table where he and the agents sat. In response to the agents' questions about particular applications, JOSEPH voluntarily clicked and opened the applications.

One of the interviewing agents read out loud a portion of a message from a message thread from Application- 1 on JOSEPH's phone. The message referenced an individual who was going to travel to Afghanistan to join "AQ" and commit jihad.

Shortly after this thread was observed and read aloud, JOSEPH stated that he did not want the agents to look at his phone anymore. He signed a Consent to Search form that formalized his earlier verbal consent for the agents to look at his phone, and then he terminated the interview at approximately 1:19 a.m.

As JOSEPH got up from the table in the common area, the agents asked him not to delete anything. JOSEPH left the common area and went back to his room.

The agents left the dorm, and they drove to a parking lot adjacent to the USF Police Station. At approximately 1:38 a.m., surveillance camera footage shows that JOSEPH exited his dorm. Several minutes later, agents observed

Defendant's Initials __CJ__          18

JOSEPH running by their vehicle in the direction of the USF police station. The agents stepped out of their vehicle and spoke to JOSEPH. At that time, JOSEPH stated that he wanted to cooperate and tell them about Alkattoul, who he identified only by first name, "Omar."

JOSEPH described "Omar" as residing in another state. He said that he and "Omar" began chatting on a social media platform [Application-4] approximately a year and a half ago. "Omar" had created a chat and channel, and he had invited JOSEPH to join it.

One of the interviewing agents asked JOSEPH if "Omar" was the account user for the message from the Application-1 thread that the agents had seen and read out loud in his presence. JOSEPH confirmed that "Omar" was the user who had sent those messages.

Additionally, JOSEPH showed agents the entirety of messages from Application-1 on his phone, and the messages between JOSEPH and "Omar" that the agent had previously read aloud were no longer on JOSEPH's phone.

One of the agents asked JOSEPH why he had deleted Application-1 messages with "Omar," and JOSEPH stated that he had deleted those communications because he "did not want to get in trouble." JOSEPH had deleted the Application-1 communications with Alkattoul during the approximately 19-minute window after he had terminated the interview in the

common area of the dorm and before he approached agents again in the parking lot.

JOSEPH stated that he had attempted to call "Omar" [on Application-3] but that "Omar" did not answer. The agents viewed [Application-3] on JOSEPH's phone, which showed that JOSEPH had attempted this call at approximately 1:24 a.m., or roughly five minutes after JOSEPH had terminated the interview with agents in the common area of his dorm.

JOSEPH said that "Omar" never asked him to do anything or help him conduct an attack, but he said that "Omar" had made a "manifesto" and had sent him a link to it.

JOSEPH signed another Consent to Search form and allowed the agents to seize and search his phone. JOSEPH voluntarily provided the agents with the PIN for his phone.

The agents left USF and took JOSEPH's phone back to the Tampa FBI office for analysis.

Later in the day, at approximately 7:00 p.m. on November 5, 2022, FBI agents again interviewed of JOSEPH in his dorm common area and returned his cell phone to him.

JOSEPH said that "Omar" had first initiated contact with him on Application-4 in or around August 2021. JOSEPH did not think that "Omar"

Defendant's Initials _CJ_          20

supported ISIS at the time, but that he was friends with people who supported ISIS. During this conversation about ISIS, JOSEPH said that "Omar" debated others on Application-1 regarding ISIS.

JOSEPH said that he thought that "Omar" had made a "manifesto" on Google Docs and that it was viewable to the public. JOSEPH said that the document contained a mention of Omar Mateen, as well as expressions of hate toward Hindus, Christians, and Jews. The document also mentioned terrorism, and "Omar's" desire to conduct a terrorist attack in ten years.

During this interview of JOSEPH, on the evening of November 5, 2022, he told agents that he had only deleted the [Application-1] messages with "Omar" from the previous day. He denied that "Omar" had made any threats in the messages that he had deleted, but he said that he had deleted the messages because he was embarrassed.

FBI agents performed a digital extraction of the contents of JOSEPH's cellphone.

All Application-1 messages on JOSEPH's phone were reviewed, and messages between Alkattoul and Joseph, including those that the agents had previously seen during the initial interview in his dorm, were not present on the extraction. Application-1 was still present on JOSEPH's phone, however, and messages with other individuals were also present on the device.

Defendant's Initials CJ         21

12. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 25th day of July, 2023.

ROGER B. HANDBERG
United States Attorney


_____
Christopher Joseph
Defendant

_____
Matthew Farmer
Attorney for Defendant


_____
Joseph H. Wheeler, III
Special Assistant United States Attorney

_____
Cherie L. Krigsman
Assistant United States Attorney
Chief, National Security Section